Turney, J.,
delivered the opinion of the court.
The portions of the will of J. G. Hornberger rais--ing the questions for discussion here, are the following:
*636 “At the death of my wife, all of my property of every kind, except the life estate of my brother, if he is living, shall vest in, and belong to, the City of Clarksville, in the county of Montgomery, State of Tennessee, for the use and benefit of the poor of said city, and the said property shall be under the control of the Mayor and A.ldermen of said City of Clarks-ville in trust for the use and benefit of the poor of said city, to be used, appropriated, and expended in such manner as will supply the wants and necessities of the poor of said city.
“ This devise to the City of Clarksville embraces all of my property at the death of my wife and brother. But the devises herein mentioned will be subject to the following exception, to-wit: the flower garden and grave yard where my child Jettie is buried, and where I expect myself and wife to be buried, at my present residence, which flower garden and grave yard ' contain about one quarter of an acre of ground, is not to be sold under any circumstances, but the same is vested in trust in my wife for and during her natural life, and at her death the said City of Clarksville and the Mayor and Aldermen of said city, are to act as trustees, and are to hold said grave yard and flower garden in trust, and out of my estate to keep the same up.” * * * *
“ I have had good reason to change my affection from those who .would get my property in the event I should give the same absolutely to my wife. I ■ prefer that the poor should have it, in the community where I have lived and expect to die. Then, again, *637 I have had much trouble on this point, to-wit: I wish the grave of myself, wife, and child, to be perpetually cared for, and in the event I give my estate to my wife, then at her death our graves would go into strange hands, and be uncared for; as it is, by giving my property to the City of Clarksville, and constituting said board of Mayor and Aldermen the trustees and guardians of said graves and of said fund, I feel that I have some persons who vrill perpetually look after our graves, and will give the same all needful care and attention. Now out of the fund which is vested in the said Oity of Olarhsville for the benefit of the poor, the Mayor and Aldermen of said city are to keep said grave yard and flower garden at all times substantially enclosed, etc., etc., etc., and after defraying the expenses of keeping up the grave yard and flower garden they shall pay the remainder of the annual interest and income to the poor, etc., my object being to make my estate a perpetual annual fund for the poor of Clarksville, and for the purpose of keeping up the grave yard,” etc.
We have been thus tedious in citing the will, that its entire language might be before us, to enable us, by a construction of the whole together, to arrive at the controlling purpose of the testator.
The remainder of his estate after the death of his wife, the testator devises in trust for the benefit of the poor of Clarksville.
In the 2d article, the grave yard, etc., are excepted, and the trustees directed to keep the same up out of his estate.
*638 In tlie 3d article, he prefers the poor to those who would inherit his estate,, and directs that, out of the fund vested in the trustees for the benefit of the poor, the graves be kept up., etc.
We are. of opinion that the primary motive of the testator was to provide for the poor, and not, as insisted for . the complainants, that the grave yard ' and flower garden should be perpetually cared for and preserved.
To provide for the latter purpose, he has carved a fund out of that set apart for the poor.
He has created a trust for the benefit of the poor, and then, out of that, he has provided for the perpetual preservation of the grave yard.
It is insisted for the complainants that the purpose of the testator was chiefly to keep perpetually in good and ornamental condition the grave yard and flower garden.
We quote- in reference to this the language of Vice Chancellor Kindersly, in Hoar v. Osborn, 1 Eq. Cases, 686
“It is contended, indeed, that ihe testatrix, in creating this trust, had no idea of making a charitable gift, her only object being to do honor to the memory of her mother. But the court cannot inquire into the motives of the donor, if the gift is in its nature -a charity. I must hold the gift valid so far as it relates to the repair of the window.”
The clause of the will questioned in that case was: — “As a further memorial of my affection for my late dear mother, I desire that an ornamental painted window be placed in Hungerton Church, the *639 design and cost thereof to be at the discretion of' my trustee or trustees.”
In this case, the gift to the use of the poor is not of a residue after the establishment of . a perpetuity. The language, “after defraying the expenses of keeping up the grave yard, etc.,” must be construed in conjunction with all the expressions of the will upon the subject., '
As we have clearly seen, the entire estate is given in trust for the benefit of the poor. Subsequently, this devise is qualified by an exception for the purpose of the. perpetuity: and again it is provided that out of the fund created for the charity the perpetuity shall be supported.
We must presume the testator to have used the word “remainder” with reference to the other portions of the will, and to have given it the meaning to which they necessarily restrict it.
If the testator had stopped at the clause first quoted, there could have been no question as to the unconditional devise to charitable uses.
If, afterward he made an illegal devise, carving out of the charity fund a fund for a perpetuity, which must fail, we are not at liberty because of the dependent and illegal devise, to avoid the whole will; but rejecting the part that is repugnant to law and public policy, we must allow the part which is lawful to be the will of the testator: that which R primary • and valid must stand; that which is secondary and void must fail.
We feel sure that the graves of the munificent *640 donor, bis wife, and child, will not be neglected by the appreciative community for whom he has supplied so liberal a provision for the charge of its ■ poor.
The trust to the wife, of keeping up the grave yard and flower garden during her life, is lawful.